James F. Selbach, Esq.
Selbach Law Firm, PLLC
*Counsel for Debtor[1]*
290 Elwood Davis Road, Suite 290
Liverpool, New York 13088

Charles Higgs, Esq.
McCabe, Weisberg & Conway, P.C.
*Counsel for Creditor M & T Bank as Servicer*
 *for Freddie Mac*
145 Huguenot Street, Suite 210
New Rochelle, New York 10801

In Re:  Michael Bell and Clarissa Bell
        Chapter 13 Case No.: 14-60510

## LETTER-DECISION AND ORDER

*I.    Introduction*

      Debtors filed a voluntary petition for Chapter 13 relief on March 31, 2014.  Presently before the Court is Debtors' motion made pursuant to 11 U.S.C. § 362(k),[2] filed July 7, 2014 (the

---

[1] Attorney Selbach has an established practice and customary arrangement with the consumer bankruptcy bar in this District to provide limited representation to debtors related only to the pursuit of sanctions for alleged violations of the automatic stay and/or discharge injunction.  In this case, Attorney Selbach is providing limited representation to Michael and Clarissa Bell ("Debtors") related only to the pursuit of sanctions for alleged violations of the automatic stay.  Debtors' bankruptcy case was filed through Mark A. Wolber, Esq., who, pursuant to Federal Rule of Bankruptcy Procedure 2016(b), filed a Disclosure of Compensation of Attorney for Debtor(s) on the petition date indicating that he had received $1,500.00 for services rendered or to be rendered on behalf of Debtors in contemplation of or in connection with their bankruptcy case (the "2016(b) Statement," ECF No. 1).  Attorney Wolber disclosed in the 2016(b) Statement that he had agreed to provide legal representation for "all aspects of the bankruptcy case" and he had not agreed to share the $1,500.00 fee with any other person unless they were members and associates of his firm.  Attorney Wolber did not specifically exclude sanctions motions from the scope of his representation in the 2016(b) Statement.  Attorney Wolber has not amended his 2016(b) Statement.  Despite the Court's longstanding requirement that Attorney Selbach timely file a 2016(b) statement of compensation for each case in which he appears to pursue sanctions for alleged violations of the automatic stay and/or discharge injunction, Attorney Selbach did not file the same until August 22, 2014 (the "Selbach 2016(b) Statement," ECF No. 35), forty-six days after he filed the Motion.  The Honorable Margaret Cangilos-Ruiz, who presides over the Syracuse Division of the United States Bankruptcy Court for the Northern District of New York, recently examined and set forth Attorney Selbach's obligations stemming from his limited practice in this District in the case of *In re Hall*, Ch. 7 Case No. 14-30050, slip op. at 4–6 (Bankr. N.D.N.Y. filed Sept. 26, 2014), *motion for reconsideration docketed,* ECF No. 70 (Bankr. N.D.N.Y. Oct. 8, 2014), in which Judge Cangilos-Ruiz concluded that Attorney Selbach must file a 2016(b) statement of compensation once he is retained by a debtor for purposes of bringing a sanctions motion in order to comply with 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b).  Judge Cangilos-Ruiz further concluded that if Attorney Selbach has entered into a fee sharing agreement with a debtor's bankruptcy counsel of record, counsel of record must supplement his or her prior 2016(b) statement of compensation filed in the case.  While this decision post-dates Attorney Selbach's filing of the Motion in this case, the same message has been sent to and received by Attorney Selbach on multiple occasions in cases pending in this Division.  The Court is troubled by Attorney Selbach's continued refusal to timely comply with these basic requirements.  The Court is also troubled by the shared fee arrangement disclosed in the Selbach 2016(b) Statement in the absence of a supplemental 2016(b) Statement by Attorney Wolber.  The issue of what the Court should do about counsels' noncompliance with the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016(b), however, is more appropriately addressed once (or if) the Court adjudicates damages in this matter.
[2] Unless otherwise noted, all statutory references are to Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (2012).

"Motion," ECF No. 22), wherein Debtors request an order of the Court finding that M & T Bank Corporation ("M & T") has violated the automatic stay imposed by § 362(a) and thereafter imposing sanctions and monetary penalties in the form of actual damages including, but not limited to, attorneys' fees.[3] M & T appeared in this matter and opposed the Motion.

The Motion was originally returnable on the Court's regular motion calendar in Utica, New York on July 31, 2014, and continued to August 26, 2014. M & T filed its objection to the Motion on July 24, 2014 (the "Objection," ECF No. 27), and a Supplemental Brief on August 15, 2014 (the "M & T Brief," ECF No. 29). Debtors filed a Reply Memorandum of Law on August 20, 2014 (the "Reply Memorandum," ECF No. 34). Following oral argument on August 26, 2014, the Court requested that the parties file a joint stipulation of facts and offered them an opportunity for further submissions, neither of which were filed. On September 22, 2014, the Court took the matter under advisement. Having now considered the Motion, the Objection, the M & T Brief, the Reply Memorandum, and the parties' oral arguments, the Court now makes the following findings of fact and conclusions of law.

II.   *Jurisdiction*

The Court has jurisdiction over the parties and the subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1), and 157(b)(2)(A).

III.  *Facts*

The facts in this matter are undisputed. Debtors listed M & T on their creditor matrix and M & T therefore received notice of their bankruptcy filing from the Bankruptcy Noticing Center

---

[3] Local Bankruptcy Rule 9013-1(a)(2) requires the movant in an accompanying notice of motion to set forth the specific relief sought and the rule or statute upon which the motion is predicated. This Local Bankruptcy Rule subsection continues to state that movant's "[f]ailure to provide the basis for relief sought is cause for the Court to deny the relief requested." LBR 9013-1(a)(2). Notwithstanding the clear directive of Local Bankruptcy Rule 9013-1(a)(2) and the frequency with which Attorney Selbach files motions for alleged violations of the automatic stay and/or discharge injunction in this District, the Notice of Motion filed on June 17, 2014 ("Notice," ECF No. 17), simply states that the relief demanded is an "Order Imposing Sanctions of Actual Damages and Attorneys' Fees." Neither the Notice nor Motion set forth the statutory predicate for the relief requested although the same is easily ascertainable. While the Court will decide this Motion on the merits, Attorney Selbach is advised to abide by the Local Bankruptcy Rules of the Northern District of New York with respect to future filings.

("BNC") on or about April 3, 2014, as verified by the BNC's Certificate of Mailing filed on the same date (EFC No. 8). Debtors included M & T on their Schedule D, titled "Creditors Holding Secured Claims," as a secured claimant with a lien in the amount of $97,940.00 collateralized by a security interest in real property located at 6933 Koenig Road, Floyd, New York (the "Property"). Debtors did not include the Property on their Individual Statement of Intention. On April 28, 2014, M & T's counsel in this matter filed a Notice of Appearance in the case (ECF No. 9). The next day, M & T filed a motion for relief from the automatic stay pursuant to § 362(d)(1) on the ground that Debtors defaulted on the mortgage on May 1, 2012 (ECF No. 10), which the Court granted by Order issued May 28, 2014 (the "Stay Relief Order," ECF No. 15).

On or about June 6, 2014, M & T sent Debtors an Annual Escrow Account Disclosure Statement regarding the underlying mortgage included on Debtors' Schedule D (the "Escrow Statement," Motion, Ex. A). The two-page Escrow Statement sets forth new payment information, including principal and/or interest in the amount of $519.39, an escrow deposit in the amount of $430.02, and a prorated escrow shortage in the amount of $227.28, for a new aggregate monthly payment in the amount of $1,176.69. The Escrow Statement also indicates that Debtors new payment amount would be effective August 1, 2014. The second page of the Escrow Statement includes the following disclaimer: "If you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral."

On or about June 16, 2014, M & T sent Debtors their May 1, 2012 Mortgage Statement indicating an amount due of $32,175.61 on or before July 1, 2014, which is comprised of principal in the amount of $67.87, interest in the amount of $431.52, a tax/insurance charge in the amount of $451.19, an overage/shortage charge in the amount of $306.59, a past due amount in the amount of $23,390.95, unpaid late charges in the amount of $31.17, a return item/other fee(s) in the amount of $112.03, and a recoverable corporate advance in the amount of $7,384.29 (the "Mortgage

Statement," Motion, Ex. B).  The following disclaimer appears in the middle of the one-page Mortgage Statement: "If you are in bankruptcy or received a bankruptcy discharge of debt, this communication is not an attempt to collect a debt against you personally but strictly for informational purposes only."  The Mortgage Statement also indicates that M & T's records show that Debtors' account is in foreclosure and further advises Debtors that "[p]rior to sending any funds/payments please contact the attorney firm handling your foreclosure to obtain the current reinstatement or payoff amount."

IV.    *Arguments*

Debtors' arguments are largely recycled from prior motions and cases, as evidenced by the submission of a canned memorandum of law.  This case differs, however, in one important respect from prior cases in that the Court is asked for the first time to address whether and to what extent the automatic stay prohibits a mortgagee from communicating with a debtor about a delinquent mortgage debt.  Debtors argue that M & T willfully violated the automatic stay by mailing them the Escrow Statement and Mortgage Statement notwithstanding the Court's issuance of the Stay Relief Order because those documents were not required to be sent as a precursor to commencement of a state court foreclosure action and included directions for Debtors to obtain an exact payoff amount.  While Debtors concede that a bankruptcy disclaimer may insulate the mortgagee from liability in certain instances, they argue that M & T's disclaimers in the Escrow Statement and the Mortgage Statement are inadequate to do so when the documents are viewed in their entirety.  Specifically, Debtors assert that bankruptcy disclaimers must be analyzed on a case-by-case basis within the context in which they appear.  Debtors contend that if the document includes a total amount due and a due date, for example, as is the case here, or if the document indicates that the debtor would remain liable for a deficiency balance, then the bankruptcy disclaimer is insufficient to protect the mortgagee from a finding of willfulness under § 362(k).

Accordingly, Debtors ask the Court to grant their Motion as to the violation and to proceed to an evidentiary damages hearing.

As a general premise, M & T contends that the automatic stay does not prohibit all communication between creditors and debtors, and, moreover, that certain communications are not only permitted but are necessary when the subject creditors are secured creditors. More pointedly, M &T asserts three interrelated arguments in defense of its mailings to Debtors and the Motion. First, M & T asserts that a mortgagee may provide notice of an escrow shortage and monthly statements to a debtor who has not stated an intention to surrender the collateral. M & T argues that because Debtors did not indicate their intention with respect to the Property on their Statement of Intention, Debtors had a post-petition interest in receiving ongoing information from M & T, including monthly statements and notice of the possibility that M & T would be proceeding in rem. Second, M & T argues that it did not willfully violate the automatic stay when it sent Debtors the Escrow Statement and the Mortgage Statement for informational purposes only after it had been granted relief from the automatic stay to pursue its lien. Third, M & T asserts that the bankruptcy disclaimers made clear that M & T was not attempting to collect from Debtors personally but rather was seeking to enforce only its in rem rights to the real property. M & T therefore asks the Court to deny Debtors' Motion.

V.    *Discussion*

Section 362(a) imposes a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of [the debtor's bankruptcy case]." 11 U.S.C. § 362(a)(6). In other words, § 362(a)(6) prevents only in personam actions against the debtor and does not prohibit in rem foreclosures on non-estate property. *In re Log, L.L.C.*, 2010 Bankr. LEXIS 3976, at *14 (Bankr. M.D.N.C. Nov. 9, 2010) (citing *In re Everchanged, Inc.*, 230 B.R. 891, 893 (Bankr. S.D. Ga. 1999)). Section 362(k) provides, in part, that "an individual injured by any willful violation of the automatic stay shall recover actual damages, including costs and

attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). In order to recover under § 362(k)(1), a debtor must prove five elements: "(1) that a bankruptcy petition was filed; (2) that the debtors are individuals under the automatic stay provisions; (3) that creditors received notice of the petition; (4) that the creditors' actions were in willful violation of the stay; and (5) that the debtor suffered actual damages." *Burch v. Bank of Am., N.A. (In re Burch)*, 2011 Bankr. LEXIS 2931, at *6 (Bankr. D.S.C. July 26, 2011) (citing *Lomax v. Bank of Am., N.A.*, 435 B.R. 362, 376 (N.D. W. Va. 2010) (quoting *Grisard-Van Roey v. Auto Credit Ctr., Inc. (In re Grisard-Van Roey)*, 373 B.R. 441, 444 (Bankr. D.S.C. 2007) (internal quotation marks omitted))).

The Court's inquiry in this case focuses on the fourth prong, namely whether M & T's actions were in willful violation of the automatic stay. Because M & T had actual and timely notice of Debtors' bankruptcy filing and therefore of the existence of the automatic stay, the question in this case is not one of willfulness–defined to include any deliberate act by the creditor done with knowledge of the automatic stay that has the effect of violating the automatic stay, *Weber v. SEFCU (In re Weber)*, 719 F.3d 72, 82 (2d Cir. 2013)–but rather whether M & T's correspondence was an attempt to collect a debt as a personal liability of Debtors in violation of § 362(a)(6).

Whether M & T's mailing of the Escrow Statement and Mortgage Statement violate the automatic stay is a particularly fact-intensive inquiry in an area of law where no bright-line rule exists. *Zotow v. Zotow (In re Zotow)*, 432 B.R. 252, 258 (B.A.P. 9th Cir. 2010) ("Whether a communication is a permissible or prohibited one is a fact-driven inquiry which makes any bright line test unworkable.") (collecting cases). Case law, however, is instructive in defining which creditor communications violate the automatic stay. *Id.*; *Schatz v. Chase Home Fin. (In re Schatz)*, 452 B.R. 544, 550 (Bankr. M.D. Pa. 2011).

As a starting point, the Court recognizes that "the automatic stay does not prohibit the secured lender from giving information to the debtor that the debtor wants and needs." *Connor v. Countrywide Bank, N.A. (In re Connor)*, 366 B.R. 133, 138 (Bankr. D. Haw. 2007). Hence, correspondence that is informational in nature does not violate the automatic stay. *In re Zotow*, 432 B.R. at 259; *In re Mele*, 486 B.R. 546, 557 (Bankr. N.D. Ga. 2013) (analyzing the "overall tenor" of the correspondence to determine whether it was informational or sought to collect a debt personally from the debtor). In cases where courts do find a violation of either the automatic stay or the discharge injunction by a mortgagee for loan related correspondence,[4] the common factor is a clear demand for payment of a prepetition debt accompanied by coercion in the form of threatened action or some other consequence for nonpayment, or harassment to induce the debtor to pay. *In. re Zotow,* 432 B.R. at 258–59 (collecting cases); *In re Connor*, 366 B.R. at 38 ("A creditor may not 'provide information' in a manner which is threatening, harassing or coercive.") (citing *Sears Roebuck & Co. v. Epperson (In re Epperson)*, 189 B.R. 195, 198–99 (E.D. Mo. 1995))). When evidence of coercion or harassment is present, courts typically find that a disclaimer on the communication is ineffective. *Id.* at 259; *In re Youngkin*, 2014 Bankr. LEXIS 765, at *16 (Bankr. E.D.N.C. Feb. 27, 2014) (finding that in spite of the disclaimer, the mortgagee's monthly informational statement violated the discharge injunction because it was "nothing more than a cleverly disguised form meant to induce payment of funds [from the debtor] to [the mortgagee].").

In this case, Debtors did not indicate their intention with respect to the Property and the record does not reflect that either Debtors or their counsel ever advised M & T that Debtors intended to surrender the Property and no longer wished to receive information regarding their mortgage with M & T. Debtors' failure to expressly indicate their desire to surrender the Property

---

[4] Given the similarities between §§ 362(a) and 524, the Court considers case law under both statutory sections in deciding the present case. *See In re Fucilo*, 2002 Bankr. LEXIS 475, at *39 (Bankr. S.D.N.Y. Jan. 24, 2002) (noting that these sections are comparable in many respects because § 524 is the post-discharge analogue of § 362).

as required on their Statement of Intention, however, must be balanced by their inability to exercise the so-called "ride through" option for the Property in their Chapter 7 filing by making regular monthly mortgage payments because they were delinquent and the loan was in foreclosure as of the date of filing.[5] Although a creditor can send statements to a debtor who intends to retain the property and pay the secured debt going forward, *In re Joens*, 2003 Bankr. LEXIS 1567, at *2 (Bankr. N.D. Iowa Nov. 21, 2003), M & T's argument that Debtors had a post-petition interest in receiving ongoing information from M & T is unavailing thus far given Debtors' Chapter 7 status and their longstanding default and delinquency at the time of filing.

M & T also contends, however, that the Escrow Statement and Mortgage Statement were necessary to relay information to Debtors related to the status of the pending foreclosure action, which M & T had been granted relief to pursue by virtue of the Lift Stay Order. The Lift Stay Order permitted M & T to pursue its in rem rights against the Property and to take whatever action is permissible under nonbankruptcy law. Notwithstanding that the correspondence was not in the form of a required disclosure under New York or federal law in connection with its pending foreclosure action,[6] M & T's argument that the correspondence was purely informative carries more weight in light of the Lift Stay Order and the pendency of M & T's foreclosure action.

Neither the Escrow Statement nor the Mortgage Statement assert that Debtors will be personally liable for any post-foreclosure deficiency and, when viewed separately or cumulatively, the correspondence does not appear to be targeted toward collection of the pre-petition debt. In fact, the Mortgage Statement does not provide Debtors with an option to pay the debt directly,

---

[5] Under the "ride through" option for real property, a debtor whose real estate mortgage is not in default does not have to reaffirm the debt or surrender the real estate, but can retain the real estate by continuing to make the scheduled mortgage payments. *In re Carabello*, 386 B.R. 398, 401 (Bankr. D. Conn. 2008). Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Second Circuit authority established that the "ride through" option existed with respect to both real and personal property. *Capital Communications Federal Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43 (2d Cir. 1997), *cert. denied,* 522 U.S. 1117 (1998). Courts have generally held that BAPCPA eliminated the "ride through" option with respect to personal property, but not with respect to real property. *In re Caraballo*, 386 B.R. at 401–02 (collecting cases).

[6] Article 13 of the New York Real Property Actions and Proceedings Law requires the mortgagee to serve statutorily proscribed notices to the mortgagor in all foreclosures of owner-occupied one-to-four family dwellings. *See* N.Y. REAL PROP. ACTS LAW §§ 1303 & 1304 (Consol. 2014).

even if they desire to do so, without first contacting an M & T foreclosure representative. Perhaps more critical to the Court's analysis is that M & T's correspondence to Debtors on its face does not smack of coercion or harassment. The Escrow Statement merely communicates information to Debtors obtained in a recent escrow analysis computed by M & T, which M & T is required by law to provide to Debtors annually. The Mortgage Statement, although it indicates a total amount due, a due date, and the possibility of a late charge if payment is received after the due date, includes an unambiguous and conspicuously placed disclaimer in bold typeface that expressly advises Debtors that it is "not an attempt to collect a debt against [them] personally but strictly for information purposes only." Based upon the facts presented in this case and the roadmap for determining automatic stay violations involving a secured creditor or mortgagee as set out in prior case law, the Court finds that M & T's correspondence with Debtors is permissible and consistent with its exercise of its in rem rights.

VI.    *Conclusion*

There is no bright-line rule for determining whether and to what extent the automatic stay prohibits a secured creditor from communicating with a debtor about a delinquent mortgage debt because the answer depends upon the context. *In re Connor*, 366 B.R. at 134. Certain principles exist that are generally applicable, however, to guide this Court and other courts when deciding the issue. In order to best preserve the importance and purpose of the automatic stay, when analyzing and adjudicating alleged § 362(a) violations, the Court must draw a distinction between communications between a creditor and a debtor that contain threats or harassment and those that that merely set forth the fact that money is owing. *Morgan Guar. Trust Co. v. Am. Sav. & Loan Ass'n*, 804 F.2d 1487, at 1492 n.4 (9th Cir. 1986), *cert. denied*, 482 U.S. 929 (1987) (superseded on other grounds). In order to violate the automatic stay, the creditor must demand payment from a debtor personally and that demand for payment must be accompanied by some form of coercion or harassment. Having established these parameters, the Court finds in this case that M & T's

correspondence to Debtors is not violative of the automatic stay.  Therefore, Debtors Motion is denied.

    It is SO ORDERED.

Dated: November 13, 2014                    /s/DIANE DAVIS_____
       Utica, New York                    DIANE DAVIS
                                                United States Bankruptcy Judge